

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

**ENTERED**
**01/26/2012**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| WENDY M. SCHREIBER | § | |
| DEBTOR(S) | § | CASE NO.  06-30361-H5-7 |
| | § | |
| T.D. FARRELL CONSTRUCTION, INC. | § | |
| PLAINTIFF (S) | § | ADVERSARY NO.  06-3681 |
| | § | |
| VS. | § | |
| | § | |
| WENDY M. SCHREIBER | § | |
| DEFENDANT(S) | § | |

## MEMORANDUM OPINION

Before the Court is the complaint of T.D. Farrell Construction, Inc. (Plaintiff Farrell), a Georgia company authorized to do business in Texas, seeking a judgment against debtor, Wendy Schreiber.

This case arose in connection with Farrell's construction of Home Depot store #6584 in Corpus Christi, Texas in 2002-2003. Farrell contracted with Monitor Trust to perform site preparation  and utilities work for the building. Monitor Trust (Monitor) subcontracted with Town & Country Excavation, Inc. (Town & Country) to excavate and improve the real property selected for the project.

Specifically, Farrell seeks a judgment against debtor contending that she

violated the Tex. Prop. Code §162.001 et. seq. (violation of the Texas Construction Trust Fund Act) and a determination that the judgment is not dischargeable under 11 U.S.C. § 523(a)(4)(defalcation in a fiduciary capacity) or § 523(a)(6)(willful and malicious injury to property of another). In addition, Farrell objects to debtor's discharge under 11 U.S.C. § 727(a)(2)(B) (concealment of property of the estate after the filing of the petition with intent to hinder, delay or defraud); (a)(3) (failure to keep or preserve recorded information from which debtor's financial condition could be ascertained), (a)(4)(A) (knowingly and fraudulently making a false oath or account), (a)(5) (failure to explain satisfactorily any loss of assets), and (a)(7)(committing acts in violation of § 727(a)(2),(3),(4),(5), or (6) on or within one year before the date of the petition, or during the case, in connection with another case, under the Bankruptcy Code or the Bankruptcy Act, concerning an insider.) In addition, Farrell objects to debtor's exemptions.

In response, debtor agrees that she was a minority shareholder of Town &Country Excavation, Inc. Debtor denies any actions in violation of 11 U.S.C. §§523 or 727.

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and § 157. This is a core proceeding.

## I. Procedural History

On February 2, 2006, Wendy Schreiber filed a voluntary Chapter 7 petition. Farrell filed the instant complaint and both sides moved for summary judgment. Farrell moved for summary judgment on the basis that its state court judgment against others precluded debtor from litigating liability. The bankruptcy court ruled that debtor is not in privity with Town & Country for purposes of application of claim or issue preclusion. This ruling was affirmed on appeal. The district court further suggested that Farrell might use the judgment and other evidence to demonstrate that debtor is liable for Town & Country's debt. Upon remand, this court tried the issues stated in the parties' pleadings and joint pretrial statement. Unlike its allegations in its motion for summary judgment, Farrell's complaint and the parties' joint pretrial statement do not contend that debtor is liable to Farrell on the basis of the debt represented by that judgment. Rather, Farrell alleges that debtor, in her capacity as an officer of Town & Country, individually owed a duty under the Texas Construction Trust Fund Act to pay Town & Country's suppliers and failed to do so, thereby establishing a debt for damages owed by debtor in favor of Farrell.

## II. Facts

### A. Wendy Schreiber's Background and Work History

Wendy Schreiber was born December 14, 1979.  At the time of the Home

Depot construction she was 23. After graduating high school, Wendy Schreiber worked at Site Preparation, a construction site preparation company. Site Preparation worked on a number of Home Depot construction projects. There Schreiber trained to do preliminary estimates for site work. In 2000 the owner of Site Preparation died and the company closed.

### 1. Express Site Preparation

After Site Preparation closed, three of its employees, Bill Williams, Shawn Piddeman, and Wendy Schreiber started a company, Express Site Preparation, to perform construction site work. Express Site Preparation was in business for only a year and closed when Piddeman moved out-of-state. Express Site Preparation was financially successful and performed site work on five jobs including three Home Depots. Wendy Schreiber saved approximately $150,000 from her earnings at Express Site Preparation.

### 2. Town & Country Excavation, Inc.

When Express Site Preparation ceased doing business, Williams and Kurt Codding, a former employee of Home Depot, invited Schreiber to join them to establish Town & Country Excavation, Inc. Kevin Robinson, another employee of Express Site Preparation agreed to act as consultant to Town & Country.[1]

---

[1] Subsequent to the events described herein, Robinson and Schreiber began a personal relationship and now have two children together. Robinson pays Schreiber child support periodically.

Page 4 of 41

When Town & Country was formed, Bill Williams was in his 60s and nearing retirement, Kurt Codding was 47, Kevin Robinson was 42, and Wendy Schreiber was 23. Initially, Williams was president, Codding was vice-president, and Wendy Schreiber was secretary.

Subsequently, in July or August 2002, Williams retired. At that point, Kurt Codding became president and took a 60% share of the corporate stock. Schreiber remained secretary of the company and a minority shareholder in the company with her interest at 40%.

From its inception date of January 4, 2002, until it ceased doing business in 2004, Town & Country grossed $7,526,905.46. Town & Country's gross receipts for 2003 were $4.7 million. In addition to the shareholders, Town & Country employed Lester Shimonski, Chase Pasely, and  Connie Aikens. Connie Aikens controlled the company's computer server, input all invoices, printed all company checks, and compiled the company's payment requests for the Home Depot Corpus Christi job.

B. Home Depot Corpus Christi

T.D. Farrell Construction, Inc., plaintiff and general contractor, was owned 100% by Timothy Farrell. T.D. Farrell Construction, Inc. contracted with Home Depot to build a retail store at 4014 S. Port Avenue, Corpus Christi, Nueces County, Texas 78415, in 2002 to 2003,  for $4,698,764.00. Home Depot paid T.D. Farrell

Construction, Inc. in full under its contract.

Inasmuch as Kurt Codding had left Home Depot to start Town & Country Excavation, Inc., there was some concern that if Home Depot was aware that Farrell proposed to use Codding's company as a subcontractor on the Home Depot Corpus Christi job, that Home Depot would not award T.D. Farrell the general construction contract. Monitor Trust had previously acted as sub-contractor to Town & Country, so it was proposed that Monitor Trust act as subcontractor with Farrell and Town & Country sub-sub-contract with Monitor Trust.

T.D. Farrell subcontracted the sitework and utilities for the Home Depot Corpus Christi project to Cyril B. Sturm d/b/a Monitor Trust for $972,000.00. Monitor Trust's scopes of work included: providing site clearing, demolition, haul off, fill, storm drainage, piping, water distribution, sanitary sewer, and temporary roads.

Monitor Trust's sub-sub-contract with Town & Country Excavation, Inc. provides for payment by Monitor Trust to Town & Country of $747,000 of the $972,000, Monitor was to be paid by T.D. Farrell. Under its contract with Monitor Trust, Town & Country Excavation, Inc. was to provide site clearing; grubbing and demolition; earth moving and excavation; a 6 inch rock cap at the building; fine grading; dewater for the scope of work; proof, rolling and compaction; sheeting and

shoring as required by OSHA; protection of existing structures; layout; lime stabilization; a concrete flow channel at the bottom of a retention pond; maintain all erosion control; and provide and maintain a six-inch construction road around the building. Kevin Robinson acted as project manager on the Home Depot Corpus Christi job for both Monitor Trust and Town & Country.

Once work began, Farrell refused to pay Monitor Trust in accordance with the contract and Monitor Trust's payment requests. Although the original contract required Farrell to pay Monitor Trust $972,000, Farrell only paid Monitor Trust a total of $662,029.34. Monitor Trust, in turn, paid Town & Country Excavation, Inc., only $503,990.53 of the $747,000 due for Town & Country's work.

Despite receiving only $503,990.53, for its work on the Home Depot Corpus Christi job, Town & Country paid $542,353.11, to suppliers, truckers, equipment lessors, employees, and others, on that job. Town & Country paid suppliers and expenses on the Home Depot Corpus Christi job as follows: building supplies $7,218.77; contract labor $76,024.00; equipment rental $80,605.50; freight and delivery $1361.57; fuel $16,476.08; job materials $155,830.68; meals 314.93; travel $28,471.40; trucking $83,582.75; automobile expense $461.17; equipment maintenance $2,135.94; hotels $933.28; finance charge $172.91; leased equipment $8,437.92; miscellaneous $4,072.99; payroll $68,426.55; legal fees $4,283.79; tools

and machinery $42.88; and truck allowance $3,500.00. <u>See</u> Plaintiff's Exhibit 1.1.
Of this total, Town & Country paid  $411,670.38 for labor and materials alone. <u>See</u>
Defendant's Ex. 2.

Town & Country paid in full all suppliers to the Home Depot Corpus Christi
project whose invoices were due as of January 31, 2003, the date of the last payment
request Town & Country submitted to Monitor Trust that was paid. In addition, Town
& Country made payments in February, and March, 2003, to Contractors Building
Supply, Crescent Machinery Inc., Labor Ready, Inc., Haas Resources Company,
Orona Bros, Fox Tree and Landscape Nursery, M&M Transport Martinez Trucking,
Padilla Trucking, Cantu's Trucking, Rosendo Nava, Hertz, and Tahoe Trucking. Each
of these businesses supplied materials or services to the Home Depot Corpus Christi
jobsite.

During the time period that Town & Country worked on the Home Depot
Corpus Christi project, the company worked on and received payments from other
projects, including a Wal-Mart in Arkansas, Dickinson High School, a Home Depot
in Lufkin, Texas, and a Home Depot in McAllen, Texas.  In addition to the income
Town & Country received from other jobs, Schreiber and Robinson loaned funds or
used personal credit cards to pay expenses associated with the Home Depot Corpus
Christi's job. Schreiber testified, and the Court finds her testimony credible, that she

used funds that she saved from working at Express Site Preparation to fund loans to Town & Country.[2]   Town & Country 's 2003 tax return reflects loans from shareholders in the amount of $123,667.  Schreiber testified that Town & Country's Compass Bank records matched the loan ledger Schreiber kept. Altogether, Schreiber's records show that she received from Town & Country a total of $239,622.86, for reimbursement of expenses, loan repayments, and draws. Schreiber's draws from Town & Country totaled $75,000.

Instead of paying in accordance with its contract with Monitor Trust, Farrell decided which suppliers should be paid and either paid them directly, back charging against Monitor Trust's pay requests, or issued joint checks payable to Monitor Trust and the supplier. Monitor Trust received no funds from the joint checks.

As work on the Home Depot project progressed, it became necessary for Monitor Trust to incur the cost of delivery of much more limestone than had originally been anticipated by the contracting parties. To pay for these increased costs, Monitor Trust submitted change order requests to Timothy Farrell, who acted as project manager for T.D. Farrell Construction, Inc. Although Farrell knew that far more limestone was required to complete the site work than had been originally anticipated and that far more limestone had in fact been delivered to and incorporated

---

[2]Debtor also used her savings to make a down payment on a home.

into construction of the project, he refused to submit Monitor Trust's change order requests to Home Depot for approval while the work was on-going. Moreover, although Farrell had paid other suppliers on the job directly or by joint check, he did not pay for limestone delivered to the jobsite by Martin Marietta Materials in February and March 2003, for which it was owed $333,645.34, and for which it filed a lien on April 30, 2003.

As of July 16, 2003, in addition to the funds due Martin Marietta Materials, there remained unpaid the following suppliers: Ingram Ready Mix owed $4,243.40; Rental Service Corp. owed $49,378.87; Crescent Machinery owed $49,736.44; Contractors Building Supply owed $13,969.85; and Austin White Lime owed $18,510.28. All of these suppliers' unpaid invoices are dated and were received after January 31, 2003.

Farrell, alleging that Monitor Trust and Town & Country were responsible for payment of these suppliers, sued and eventually took judgment against Monitor Trust, Town & Country Excavation, Inc. and others, but not debtor, for damages it allegedly suffered arising from these unpaid suppliers. Farrell alleges that he settled with these suppliers for the following amounts and took an assignment from each of its claims against Town & Country: Ingram Ready-Mix $4,243.40; Rental Service Corp. $20,000; Crescent Machinery $8,000; Contractors Building Supply $13,969.85; and

Austin White Lime $4,000. T.D. Farrell alleges that it paid Martin Marietta Materials the sum of $333,645.34 by depositing that amount into the registry of the court of Nueces County, Texas, "of which the amount of $179,645.34 had been previously paid, and the amount of $154,000.00, had not been previously paid by it." See Judgment T.D. Farrell V. Sturm, Cause No. 03-03510-E, 148th Judicial District Court of Nueces County, Texas.

Timothy Farrell delayed until September or October of 2003, long after the job was completed, to submit Monitor Trust's requested change orders to Home Depot for approval and payment. Timothy Farrell testified that Home Depot approved change orders totaling $422,915. Farrell testified that change order no. 1 totaling $73,297 included payment for drainage work and for hauling away unsuitable material; change order no. 2 totaling $188,019 included payment for supplying limestone at the main building pad and limestone at the garden center loading dock; and change order no. 3 totaling $161,599, included payment for installing rock for an access road, processing material, and stabilizing subgrade material with lime at the parking lot. These three change orders increased the amount due under the contract for Monitor Trust's scope of work from the original contract price of $972,000, to an adjusted contract price of $1,394,915.00. Although Home Depot made monthly progress payments to Farrell and Farrell added 10% to Monitor Trust's change order requests

when it submitted them to Home Depot for approval, Farrell never paid any of this

money to Monitor Trust.

## II. Violation of § 523(a)(4)

Bankruptcy Code § 523(a)(4) provides:

> (a) A discharge under section 727 ... does not discharge an individual
> debtor from any debt—
> (4) for fraud or defalcation while acting in a fiduciary capacity,
> embezzlement, or larceny ...

11 U.S.C. § 523(a)(4).

T.D. Farrell alleges that debtor violated § 523(a)(4), defalcation in a fiduciary

capacity, by violating the Texas Construction Trust Fund Act while an officer and

shareholder of Town & Country Excavation, Inc. Under Tex. Prop. Code

§162.001(a), trust funds are construction payments made to a contractor or

subcontractor or to an officer, director, or agent of a contractor or subcontractor,

under a construction contract for the improvement of specific real property in this

state. Tex. Prop. Code §162.001.  The beneficiary of any trust funds paid or received

in connection with the improvement, is any artisan, laborer, mechanic, contractor,

subcontractor, or materialman who labors or who furnishes labor or material for the

construction or repair of an improvement on specific real property in this state. Tex.

Prop. Code § 162.003. The trustee of the trust funds is any contractor, subcontractor,

or owner or an officer, director, or agent of a contractor, subcontractor, or owner, who receives trust funds or who has control or direction of trust funds.  Tex. Prop. Code §162.002.

Under the act, a trustee misapplies the trust funds if he intentionally or knowingly, or with "intent to defraud" (i.e., he intends to deprive the beneficiaries of the trust funds), directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds. Tex. Prop. Code §162.005(a)(1); Tex. Prop. Code §162.031(a). "Current or past due obligations" are those obligations incurred or owed by the trustee for labor or materials furnished in the direct prosecution of the work under the construction contract prior to the receipt of the trust funds and which are due and payable by the trustee no later than 30 days following receipt of the trust funds. Tex. Prop. Code §162.005(a)(2). It is an affirmative defense to prosecution or other action brought under subsection (a) that the trust funds not paid to the beneficiaries of the trust were used by the trustee to pay the trustee's actual expenses directly related to the construction or repair of the improvement or have been retained by the trustee, after notice to the beneficiary who has made a request for payment, as a result of the trustee's reasonable belief that the beneficiary is not entitled to such funds or have been retained as authorized or required by Chapter 53

of the Texas Property Code.  Tex. Prop. Code §162.031(b).

The Court finds that T.D. Farrell acted as trustee under the Texas Construction Trust Fund Act when it, as general contractor, paid its subcontractor, Monitor Trust, $662,029.34 for construction of the Home Depot Corpus Christi. T.D. Farrell asserts that it is itself also a beneficiary of the funds it paid to Monitor Trust in T.D. Farrell's capacity as trustee under the Texas Construction Trust Fund Act. However, T.D. Farrell has offered no authority supporting its position that it can be both the statutory beneficiary and the statutory trustee of the Home Depot Corpus Christi trust funds. The court in Robax Corp. v. Professional Parks, Inc., Not Reported in F.Supp.2d, 2008 WL 3244150 (N. D. Tex. 2008) concluded that a contractor who has paid trust funds downstream does not have the status of a beneficiary of those funds for purposes of asserting a claim against the downstream subcontractor for misuse of those funds:

> Although Texas Waterworks has met many of the elements of a Trust Act claim against defendants, it has not demonstrated that it is among the class of persons whom the Trust Act was intended to protect. The funds Texas Waterworks paid Professional were trust funds, but Texas Waterworks was not a beneficiary of these funds. . . . The court is not aware of any case in which a party in Texas Waterworks' situation-a contractor who has paid the trust funds at issue to a downstream subcontractor-has successfully asserted a Trust Act claim against a downstream subcontractor for misappropriation of those funds.

Robax Corp. v. Professional Parks, Inc., Not Reported in F. Supp. 2d, 2008 WL

3244150 (N.D. Tex. 2008). This Court concludes that T.D. Farrell is not a proper plaintiff to assert a claim to the Home Depot Corpus Christi trust funds it paid to Monitor Trust.

Nevertheless, in an effort to circumvent its lack of standing as a statutory beneficiary of the trust funds over which it was trustee, T.D. Farrell obtained assignments from some of the unpaid suppliers of their beneficiary status and T.D. Farrell alleges that, consequently, Wendy Schreiber owes it as a fiduciary duty.  T.D. Farrell alleges that each of the following entities executed an assignment to Farrell of its status as a beneficiary of trust funds under the Texas Construction Trust Fund Act: Martin Marietta Materials, Ingram Ready Mix, Rental Service Corp., Crescent Machinery, Contractors Building Supply, and Austin White Lime.

The Court finds, first, that there is no evidence that Martin Marietta Materials executed an assignment to T.D. Farrell of any claims or of its statutory beneficiary status. As to the other suppliers, T.D. Farrell has submitted no authority for the proposition that a general contractor who has acted as trustee for trust funds can by means of assignment, subrogation, or indemnity assert a statutory claim in place of the actual statutory beneficiary under the Texas Construction Trust Fund Act. The Texas Construction Trust Fund Act "subjects litigants to civil liability if (1) they breach the duty imposed by the Act, and (2) the requisite plaintiffs are within the

class of people the Act was designed to protect and have asserted the type of injury

the Act was intended to prohibit." Lively v. Carpet Services, Inc., 904 S.W.2d 868,

873 (Tex. App.- Hous. [1 Dist.] 1995, writ denied).  Where a Texas statute requires

a plaintiff to have particular characteristics to obtain the benefit of a protected status,

an assignment of the protected status is ineffective.  See eg. PPG Industries, Inc. v.

JMB/Houston Centers Partners Ltd. Partnership, 146 S.W.3d 79 (Tex. 2004) (holding

consumer claims under the Texas Deceptive Trade Practices Act non-assignable.)  In

Dewayne Rogers Logging, Inc. v. Propac Industries, Ltd., 299 S.W.3d 374, 386-387

(Tex. App.–Tyler 2009, writ denied) the court explained that indemnification,

subrogation and assignment of a statutory status, in that case, DTPA consumer status,

is ineffective to grant standing to one who seeks to pursue the statutory claims of

another:

> Subrogation is the right of one who has paid an obligation, that
> another should have paid, to be indemnified by the other. Int'l
> Elevator Co., Inc. v. Garcia, 73 S.W.3d 420, 421(Tex. App.-Houston
> [1st Dist.] 2002, no pet.). DTPA claims generally cannot be assigned
> by an aggrieved consumer to someone else. PPG Indus., Inc. v.
> JMB/Houston Ctrs. Partners Ltd. P'ship, 146 S.W.3d 79, 92
> (Tex.2004). Specifically, a subrogee who cannot qualify as a
> consumer in its own right may not assume the status of its insured for
> the purposes of pursuing a DTPA claim. Trimble v. Itz, 898 S.W.2d
> 370, 372 (Tex. App.-San Antonio 1995, writ denied). As mentioned
> earlier, Lloyds has admitted that it cannot, by itself, maintain
> consumer status. Moreover, as Rogers Logging's subrogee, Lloyds
> may not pursue claims under the DTPA by assuming Rogers

Logging's status as a consumer. See Trimble, 898 S.W.2d at 372. Therefore, Lloyds does not have standing to pursue its DTPA claims as Rogers Logging's subrogee. See Tex. Bus. & Com. Code Ann. § 17.45(4); Trimble, 898 S.W.2d at 372.

Dewayne Rogers Logging, Inc. v. Propac Industries, Ltd., 299 S.W.3d 374 (Tex. App.–Tyler 2009).

"The Texas Construction Trust Fund Act was enacted to further the . . . legislative intent of protecting materialmen." Scoggins Const. Co., Inc. v. Dealers Elec. Supply Co., 292 S.W.3d 685, 693 (Tex. App.–Corpus Christi, 2007 rev'd on other grounds) ("[T]he Trust Fund Act is remedial in nature and is to protect the "exposed" or "unpaid" subcontractor or supplier on a project," citing Lively, 904 S.W.2d at 871). Farrell has offered no authority establishing that Texas law permits assignment to a general contractor of the beneficiary protection provided by the Texas Construction Trust Fund Act. The Court declines to conclude that such an assignment is valid under Texas law for trust funds for which the general contractor was trustee.

Moreover, even if Farrell's assignments of the beneficiaries' statutory status are valid, Farrell has not shown that as a result of its payments to the unpaid suppliers, it has become an "unpaid" or "exposed" contractor on the Home Depot Corpus Christi job. To the contrary, the evidence shows Farrell marked up Monitor Trust's change order requests by 10% when it submitted them to Home Depot for

approval.   Further, the evidence shows that Home Depot paid Farrell in full. Although, Farrell alleges in its pleadings, both in state and federal court, that it "paid twice" for construction of the Home Depot Corpus Christi, this Court finds that there is no evidence of such.  The evidence establishes that Farrell was paid in full for its original contract and for the change order requests approved by Home Depot for Monitor Trusts' scope of work. The evidence establishes that, although Farrell was paid in full under its original contract and for the approved change order requests for increased costs under Monitor Trust's scope of work, Farrell failed to pay construction funds due under its contract with Monitor Trust. The Court concludes that Farrell's complaint that other downstream suppliers were not paid does not establish rights against debtor under the Texas Construction Trust Fund Act or under 11 U.S.C. § 523.

The Court finds that T.D. Farrell as trustee under the Texas Construction Trust Fund Act for construction of the Home Depot Corpus Christi paid Monitor Trust  a total of $662,029.34. The Court finds that Monitor Trust, as trustee, paid Town & Country a total of $503,990.53. The Court finds that Wendy Schreiber as trustee under the Texas Construction Trust Fund Act received a total of $503,990.53 in trust funds for construction of the Home Depot Corpus Christi. The Court finds that Wendy Schreiber, as an officer and shareholder of Town & Country, used all of the

trust funds totaling $503,990.53, plus additional funds, altogether totaling $542,353.11, to pay laborers and suppliers who furnished labor or materials for the construction of the Home Depot Corpus Christi and to pay Town & Country's actual expenses directly related to the construction or repair of the Home Depot Corpus Christi. The Court finds that Wendy Schreiber, as trustee of trust funds received in connection with the construction of the Home Depot Corpus Christi, did not misapply the trust funds in violation of the Texas Construction Trust Fund Act. See Tex. Prop. Code §162.005(a)(1); Tex. Prop. Code §162.031(a). The Court finds that T.D. Farrell has failed to prove a cause of action against Wendy Schreiber under the Texas Construction Trust Fund Act.

In addition, Farrell has failed to demonstrate that the Texas Construction Trust Fund Act creates the type of fiduciary relationship cognizable for an exception to dischargeability under § 523(a)(4). In In re Tran, 151 F.3d 339, 342-343 (5th Cir. 1998), the Fifth Circuit held "[a] state cannot magically transform ordinary agents, contractors, or sellers into fiduciaries by the simple incantation of the terms 'trust' or 'fiduciary.'" The court ruled that in order to satisfy the dictates of § 523(a)(4), "a statutory trust must (1) include a definable res and (2) impose 'trust-like' duties." Id. at 343.

The Tran court "trust-like duties" for a state statutory trust to be cognizable

under § 523(a)(4):

> The preliminary question-and the one on which the Commission's argument founders-is whether the Act imposes sufficient "trust-like" duties on a ticket sales agent. For if the duties required under the Act are not of the kind necessary to create a fiduciary as that term is used in § 523(a)(4), the only remaining form of trust that could arise under the Act would be one stemming from an agent's wrongdoing; and, as we have seen, such a trust is not what Congress had in mind when designing the exemption contained in § 523(a)(4).

> In our previous cases, we have not expressly identified the particular "trust-like" duty-or combination of duties-that a state statute must impose to create the specie of fiduciary that meets muster under § 523(a)(4). Nonetheless, one such duty has loomed large-the duty that a trustee refrain from spending trust funds for non-trust purposes. Indeed, on two occasions, the absence of such a requirement has proved determinative. In Boyle, we examined whether a contractor was a fiduciary under § 523(a)(4) by virtue of the Texas Construction Trust Fund Statute. The version of the  statute then in force specified that funds loaned or paid under a construction contract to finance improvements on particular real property were trust funds, and set forth criminal penalties for a contractor or other trustee who, with the intent to defraud, used those funds without paying fully his obligations to beneficiary. In rejecting the argument that the statute constituted as fiduciaries all persons accepting funds or loans under a construction contract, we stressed that the statute prohibited the expenditure of trust funds for non-trust purposes only if done with fraudulent intent.

> [The construction fund statute] does not prohibit a fund holder from paying, without any fraudulent intent, creditors on one project with surplus funds left over from earlier work and then using funds provided for that later project on still other work. In short, the statute does not create "red," "blue," and "yellow" dollars each of which can only be used for "red," "blue," or "yellow" construction project.

> We held that, absent such an affirmative requirement, the subject statute did not make fiduciaries out of all contractors for the purposes of §

523(a)(4), but rather made fiduciaries of only those contractors who diverted funds with the intent to defraud.

In Coburn Company of Beaumont v. Nicholas, we were confronted with an amended version of the Texas Construction Fund Statute featured in Boyle. Although the amended statute broadened the scienter requirement to cover trustees who "intentionally or knowingly" spent trust funds for non-trust purposes before fully paying all legitimate obligations, it also provided affirmative defenses that permitted a trustee to spend trust funds for non-trust purposes under certain circumstances. As the amended version of the statute, like its predecessor, did not expressly and totally prohibit such expenditures, we again rejected the argument that the statute elevated every contractor who accepts funds or loans under a construction contract to a § 523(a)(4) fiduciary.

Our discussion of the significance of the absence of a statutory prohibition of spending putative trust funds for non-trust purposes does not suggest the converse, i.e., that the mere inclusion of such a prohibition would alone be sufficient to create a fiduciary relationship under the debt discharge exception. The absence of such a prohibition is telling, though, because without such a requirement, the supposed trustee appears not so much to be responsible for managing a beneficiary's funds on the beneficiary's behalf as to be engaged in a typical agency relationship.

Not only do the Act and the regulations promulgated under it fail to prohibit expressly a ticket sales agent from spending lottery ticket proceeds for non-lottery-i.e., non-trust-purposes; neither do they mandate that the agent must segregate lottery proceeds from his other funds. Clearly, the absence of this latter duty undercuts the argument that the Act seeks to prohibit an agent from spending trust funds for non-trusts purposes without expressly saying so. For, in the absence an express segregation requirement, it would be virtually impossible to monitor even an express spending prohibition, let alone one imposed sub silentio. Therefore, any suggestion that a fiduciary of § 523(a)(4) proportions is somehow conjured up by implication just does not hold water.

In re Tran, 151 F.3d 339, 343-345 (5th Cir. 1998) (footnotes omitted.)

The court finds that Farrell has not demonstrated that the Texas Construction Trust Fund Act imposes sufficient trust like duties on a contractor to meet the requirements of § 523(a)(4).

T.D. Farrell alleges that the subcontract between T.D. Farrell and Monitor Trust creates an express trust at paragraph 11.1, which states:

> 11.1 Based upon applications for payment submitted to the Contractor by the Subcontractor, corresponding to applications for payment submitted by the Contractor to the Architect, and certificates of payment issued by the Architect, the Contractor shall make progress payments to the account of the Subcontract Sum to the Subcontractor as provided below and elsewhere in the Subcontract Documents. Unless the Contractor provides the Owner with a payment bond in the full penal sum of the Contract sum, payments received by the Contractor and Subcontractor for Work properly performed by their contractors and suppliers shall be held by the Contractor and Subcontractor for those contractors or suppliers who performed Work or furnished materials, or both under contract with the Contractor or Subcontractor for which payment was made to the Contractor by the Owner or to the Subcontractor by the Contractor, as applicable. Nothing contained herein shall require money to be placed in a separate account and not commingled with money of the Contractor or Subcontractor, shall create any fiduciary liability or tort liability on the part of the Contractor or Subcontractor for breach of trust or shall entitle any person or entity to an award of punitive damages against the Contractor or Subcontractor for breach of the requirements of this provision.

To create an express trust by a written instrument, the beneficiary, the res, and the trust purpose must be identified. Pickelner v. Adler, 229 S.W.3d 516

(Tex.App.-Hous. [1 Dist.] 2007),  review denied. The Court finds that the contract documents do not create an express trust, to the contrary, the quoted provision expressly denies that the contract creates a fiduciary relationship. Further, for breach of an express trust to give rise to an exception to discharge "[t]he purported trustee's duties must . . . arise independent of any contractual obligation. The trustee's obligations, moreover, must have been imposed prior to, rather than by virtue of, any claimed misappropriation or wrong." In re Tran, 151 F.3d 339, 342 (5th Cir. 1998). The Court concludes that T.D. Farrell has failed to prove that Wendy Schreiber is liable under 11 U.S.C. § 523(a)(4) for defalcation in a fiduciary duty arising from an express trust.

The Court concludes that T.D. Farrell has failed to prove that it holds a debt owed by Wendy Schreiber for breach of a statutory fiduciary duty under the Texas Construction Trust Fund Act, whether owed directly to T.D. Farrell, or indirectly through T.D. Farrell's assignments of the statutory beneficiary status held by others. The Court further finds that T.D. Farrell has failed to prove that it holds a debt owed by Wendy Schreiber for breach of a fiduciary duty owed to it under an express trust created by the contract documents or otherwise. Moreover, the Court finds that T.D. Farrell has failed to prove that it holds any debt owed by debtor. The Court concludes that T.D. Farrell has failed to prove a breach of fiduciary duty by Wendy Schreiber

that is non-dischargeable under 11 U.S.C. § 523(a)(4).

T.D. Farrell contends that Wendy Schreiber directed payments of trust funds to Kevin Robinson, Kurt Codding, and herself while sub-sub-contractors went unpaid. As to this allegation, the Court reiterates its finding that Wendy Schreiber used all of the trust funds to pay laborers and suppliers who furnished labor or materials for the construction of the Home Depot Corpus Christi and to pay Town & Country's actual expenses directly related to the construction or repair of the Home Depot Corpus Christi. Moreover, Town & Country's bank records and debtor's testimony show that Town & Country Excavation, Inc. worked on several simultaneous on-going construction projects at the same time it also worked on the Home Depot Corpus Christi. Schreiber and Robinson loaned funds to support the company's cash flow issues created by Farrell's failure to pay in accordance with the contract with Monitor Trust. The Court finds that debtor's and Robinson's loans to the company were repaid from non-trust funds.

### III. Violation of § 523(a)(6)

Bankruptcy Code § 523(a)(6) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--

. . . .

(6) for willful and malicious injury by the debtor to another entity or

to the property of another entity . . .

11 U.S.C. § 523(a)(6).

Farrell alleges it suffered a willful and malicious injury  under § 523(a)(6)

because debtor knew payments received on the project had to be used to pay

subcontractors and suppliers and if not paid, those subs would assert liens against the

project for which Farrell would be responsible. Farrell alleges that debtor made

payments to herself and to Kevin Robinson at a time when Town & Country was

receiving payments on the project and had unpaid debts to subcontractors and

suppliers. Farrell alleges that debtor's payments to herself and Kevin Robinson

constitutes conversion and that she made the payments knowing it would cause injury

to Farrell and with the intent to injure Farrell.  Farrell alleges that debtor took money

in the amount of $469,484.18, to injure Farrell or its property without Farrell's

knowledge   or   consent   and   without   justification   or   excuse.

The court in Newman v. Link, 866 S.W.2d 721, 726 (Tex. App.- Houston

[14 Dist.] 1993, writ denied) set out the elements of conversion of money as

follows:

> Conversion consists of the wrongful exercise of dominion or control
> over another's property in denial of or inconsistent with the other's rights
> in that property. Waisath v. Lack's Stores, Inc., 474 S.W.2d 444, 446

(Tex.1971). An action for conversion of money will lie where the money is '(1) delivered for safe keeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper.' Edlund v. Bounds, 842 S.W.2d 719, 727 (Tex. App.—Dallas 1992, writ denied).

866 S.W.2d at 726.

The Court finds that T.D. Farrell has failed to prove that: Farrell delivered money to debtor for safekeeping, that was intended to be kept segregated, substantially in the form in which it was received, and that was not the subject of a title claim by the keeper. First, Farrell delivered no funds to debtor or to Town & Country. Secondly, the funds Town & Country received from Monitor Trust were to be used to pay suppliers to the Home Depot Corpus Christi job as well as operating expenses of the Town & Country. There were no funds delivered to Town & Country or debtor that were to be kept in an intact fund or in substantially the same form as received. There were no funds delivered to Town & Country or debtor that were to be kept segregated or that was delivered for safe keeping. The Court finds that T.D. Farrell has failed to prove that Schreiber converted any funds or that she made payments to herself or Robinson with the intent to injure Farrell. The Court finds that T.D. Farrell failed to prove that debtor took money in the amount of $469,484.18, to injure Farrell or its property without Farrell's knowledge or consent and without justification or excuse.

## IV.  Discharge under § 727

### A. § 727(a)(2)(B)

Bankruptcy Code § 727(a)(2)(B), (a)(3), (a)(4)(A), (a)(5), and (a)(7)

provide:

(a) The court shall grant the debtor a discharge, unless–

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an
officer of the estate charged with custody of property under this title,
has transferred, removed, destroyed, mutilated, or concealed, or has
permitted to be transferred, removed, destroyed, mutilated, or
concealed--
. . . .

Farrell alleges that debtor violated §727(a)(2)(B) because debtor transferred,

removed, destroyed, mutilated, or concealed property of the estate after the date of

filing of the petition,  including books, records, computer equipment, documents,

papers and similar records of Town & Country and her personal financial records,

records related to construction of her house, and documents related to financial

transactions with Kevin Robinson.  Farrell alleges that on October 4, 2005, Farrell

deposed Kurt Codding who testified that all of the company records were kept at

the company office in Katy Texas and that debtor oversaw that office. Farrell

admits that Town & Country's project related records were produced, but contends

that debtor has failed to produce documents including the financial records of

Town & Country from which debtor's financial condition could be ascertained and which relate to loans made by debtor to Town & Country and repayment of those loans. Farrell alleges that it obtained records from Compass Bank showing that Schreiber signed checks to herself and to Robinson between January 2003 and August 2004 when trust funds were allegedly misappropriated.

Debtor filed a chapter 7 voluntary bankruptcy petition on February 2, 2006. Debtor attended creditors' meetings on February 23, 2006, and March 23, 2006. Debtor gave 2004 examination on November 3, 2006. Debtor amended her schedules and statement of affairs on March 15, 2006.

The Court finds that there is no evidence that debtor transferred, removed, destroyed, mutilated, or concealed any property of the estate after the date of filing of the petition. The Court finds that at Kurt Codding's direction the records of Town & Country were shipped to Kurt Codding's home near Dallas for storage prior to debtors' bankruptcy filing. Codding directed all corporate decisions from his home, which he referred to as the "Dallas office" of Town & Country.

The evidence shows that Wendy Schreiber was the minority, 40%, shareholder of Town & Country. Schreiber worked in Town & Country's Katy office and signed all of the company's checks. Schreiber did not, however, prepare or determine the payees or amounts of those checks. Other than paying the rent for the lease of the

**Page 28 of 41**

office space and the office utility bills, the evidence shows that Schreiber did not control any of the financial, business, or operational aspects of Town & Country Excavation, Inc.

The evidence shows that Codding was the sole decision maker for Town & Country. Codding directed Town & Country's employees, including debtor, in the performance of their duties. The evidence shows that when Codding consulted or relied on anyone else, it was Kevin Robinson or Connie Aiken. If a legal matter arose or if someone needed to execute a document on behalf of the company, such as a lien release or to submit a payment application on a construction job, Codding had Robinson or Connie Aiken perform those tasks regardless of whether Schreiber was present and available to perform the necessary task. Schreiber seems to have understood her position as "corporate secretary"of Town & Country to mean she was the president's administrative assistant. When Codding directed Schreiber to fax, email, or mail documents to him, she did so. When Codding wanted reports, run from the company computer Schreiber or Connie Aiken ran the reports and sent them to him. Robinson oversaw the construction projects on behalf of Town & Country.

When it was time to prepare a payment request on a job, Robinson would notify Codding of the status at the jobsite of which suppliers had delivered materials and were due for payment. Connie Aiken would run computer reports showing invoices

submitted for payment and send the information to Codding. Codding would then determine to whom and for how much checks should be written. Connie Aiken would print the checks. Schreiber would sign the checks.

Town & Country ceased business in July or August of 2004.  The evidence shows that Town & Country's bank records were located in filing cabinets all along the office wall. When Town & Country was winding down in March 2004, Kurt Codding told Connie Aikens to box up everything including bank records and send the records to him in Dallas, Texas for storage. Connie Aikens complied with Codding's direction. Schreiber had no objection to the boxing and shipping of the corporate records to Codding because he was president of the company and 60% majority shareholder. Connie Aikens also picked up and shipped to Codding Town & Country's corporate records in the possession of Levin & Atwood, the corporation's attorneys. Connie Aiken boxed all of the corporate records at Kurt Codding's direction and shipped all of them to him before the company closed its doors in July of 2004. In addition, the evidence shows that Kurt Codding directed Chase Pasley to load up Town & Country's office equipment when it closed its business and Pasley did so. Kurt Codding also told Wendy Schreiber to go home around that time because the company had no income coming in; so she would not have any more work to do in the office.

Schreiber did not file income tax returns  for the two years prior to filing bankruptcy.  Schreiber received no income from Town & Country in 2004. In preparation for her creditor's meeting, debtor obtained Town & Country's tax returns from Jerry Denman, Town & Country's accountant. Wendy Schreiber's attorney gave debtor's 2003 tax return and that of Town & Country to the U.S. Trustee's attorney at Schreiber's first meeting of creditors. Wendy Schreiber produced documents dated from 2003 through 2004 at her deposition. Wendy Schreiber has records of her bank accounts and credit cards from 1998 forward. Since 2002, Wendy Schreiber has been the signatory on two personal Compass Bank accounts, one company Compass Bank account, and in 2005 she opened an account at Hibernia Bank, n/k/a Capital One.

The Court finds that debtor produced all of her personal financial records, including a tax return, bank records, her Town & Country personnel records, and her records of loans made to and repayments made by Town & Country.  Debtor also contacted the Town & Country's corporate accountant and obtained and produced Town & Country's tax returns. Debtor also obtained production of some of Town & Country's corporate records by having Robinson contact Codding to ask Codding to ship records to Robinson's home. When Robinson received the records, debtor produced them to Farrell.

### B. §727(a)(3)

Bankruptcy Code § 727(a)(2)(B), (a)(3), (a)(4)(A), (a)(5), and (a)(7) provide:

(a) The court shall grant the debtor a discharge, unless–

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

Farrell alleges that debtor violated §727(a)(3) because Farrell sued Town & Country and others, but not the debtor, in 2003 and sued debtor and Robinson in 2005, concerning the allegedly missing trust funds of Town & Country. Farrell alleges that debtor failed to preserve recorded information concerning her personal finances and of Town & Country in violation of § 723(a)(3).    Farrell alleges that after debtor filed bankruptcy, Farrell sought books and records of Town & Country and although Farrell admits that debtor produced project related books and records, Farrell nevertheless contends that debtor has not produced books, records, documents from which debtor's financial condition or business transactions might be ascertained, including documents to support payments to debtor and Robinson made during the construction of the Home Depot Corpus Christi project. Farrell asserts that debtor testified at her 2004 examination that some payments made to her were in repayment of loans. Farrell contends there are no records for these loans.

P:\Farrell v.Schreiber Final.14.wpd                    **Page 32 of 41**

Farrell contends that it sought discovery through 2004 examinations of financial documents of Town & Country from Kurt Codding, Kevin Robinson, Compass Bank, and debtor. Farrell contends that the bank records it obtained from Compass Bank show that between January 2003 and August 2004, debtor signed checks to herself that totaled over $200,000 and checks to Kevin Robinson that totaled over $400,000. Farrell alleges that debtor could not satisfactorily explain these payments when asked about them in a Rule 2004 examination and has not kept or preserved personal financial records or those of Town & Country that would explain the purpose if any of those payments. Farrell alleges that debtor had an obligation as corporate officer and under the Bankruptcy Code to preserve recorded information related to the assets she controlled and that she failed to do so both before and during state court litigation Farrell filed in June 3, 2003, and this bankruptcy court litigation. Farrell alleges that Farrell's litigation against Town & Country placed obligations on debtor and on Town and Country to keep or preserve books, records and documents. Farrell alleges that debtor has concealed, destroyed mutilated, falsified, or failed to keep or preserve recorded information including but not limited to books documents records and papers from which debtors financial condition or business transactions might be ascertained and such acts or failures to act were not justified under all of the circumstances of the case.

## C. §727(a)(4)(A)

Bankruptcy Code § 727(a)(2)(B), (a)(3), (a)(4)(A), (a)(5), and (a)(7) provide:

(a) The court shall grant the debtor a discharge, unless–

(4) the debtor knowingly and fraudulently, in or in connection with the case--

(A) made a false oath or account;

. . . .

The Court finds that debtor has produced all of her personal records and that those records are adequate to satisfactorily explain her financial transactions. The evidence shows that, until she was made aware of it during the course of this adversary proceeding, Wendy Schreiber did not know  that Town & Country was a defendant in any lawsuit. The evidence shows that Schreiber did not retain promissory notes for Town & Country once they were paid in full. Schreiber testified that Town & Country's Compass Bank records matched the loan ledger Schreiber kept documenting her loans to the company. The Court finds Schreiber's testimony to be credible. Schreiber's records show that her reimbursements, draws, expenses, and loans repayments by Town & Country totaled $239,622.86. Schreiber's draws from Town & Country totaled $75,000.  The Court finds that debtor did not control the financial records of Town & Country Excavation, Inc. upon its cessation of

business and it was appropriate for debtor to rely upon Codding's implicit representation that he would safely store the corporate records as president and majority shareholder of the corporation.  The Court finds that debtor adequately explained the payments to herself and to Robinson. The Court finds that debtor's records and explanations are justified under all of the circumstances of the case.

Farrell alleges that debtor has misrepresented her assets and made false sworn statements in violation of § 727(a)(4)(A). Debtor's schedule A describes real property as rural homestead in Weimar, Texas. Debtor valued her interest at $450,000. Farrell contends that this statement is false.  Farrell alleges that at the time debtor swore to Schedule A, she had listed or intended to list 20 of the 70 acres of the property including the house for sale for $575,000 at ForSaleByOwner.Com.  Further, Farrell alleges that the valuation of the property is false and grossly understated as the listing price for the property currently is $875,000 and has been for months.  Farrell alleges that debtor swore at her 341 meeting on February 23, 2006, that the down payment money for the real property listed in Schedule A was taken out of savings. Farrell contends that debtor took the money from Town & Country to make the down payment.

On her schedules, debtor valued her rural homestead of 69.082 acres at 2471 Highway Colorado County, Weimar, Texas, at $450,000.00, with liens totaling

$378,149.00. Debtor claimed this property exempt for a value of $71,851.00. First and second liens against the property are held by First Ag Credit in the amounts of $239,127.00 and $139,022.00. Wendy Schreiber testified at her February 23, 2006, 341 meeting that she made a down payment of $40,000 to acquire her home located in Weimer, Texas. The total mortgage payment is $2,300. Kevin Robinson pays ½ of the monthly mortgage payment, and Wendy Schreiber pays $1,150. The property is appraised by the local taxing authority at $450,000, which is the value debtor included in her schedules. Debtor believes she has equity in the house of $72,000. The Court finds debtor's testimony credible that she saved her income from Express Site Preparation and that this income funded the purchase of her home. Farrell has failed to introduce any evidence indicating that the value shown in debtor's schedule is false. The Court finds that debtor has explained the circumstances of Town & Country's loan repayments to debtor. The Court finds that debtor has not falsely sworn to the value of her property on schedule A.

Farrell next alleges that in item 18 of her Statement of Financial Affairs, debtor knowingly and fraudulently failed to disclose other businesses she operated within the 6 year time period preceding the commencement of this case, including Lantana Services and EGN Services. The evidence shows that debtor's statement of affairs lists Town & Country Excavation Services, Inc., beginning date April 3, 2002, and

ending date June 30, 2004,   in response to question 18 requiring debtor to list information concerning all businesses in which debtor was an officer within 6 years prior to commencement of the case. In addition, debtor listed her stock ownership and officer position in response to question 21b.  The evidence also shows that for two months during 2002, debtor owned stock in Kurt Codding's company, Durosealant. Schreiber resigned from that company in March 2002 and gave the stock to Kurt Codding.  During 2002 and 2003, debtor did business as EGN Services. As EGN Services, debtor hired dump truck drivers and invoiced for the trucking services. Debtor did business as Lantana Services in 2004, and filed an assumed name certificate in Colorado County, Texas.  Debtor opened an account for Lantana Services in October of 2004 into which debtor deposited funds in October 2004 and in February of 2005.  As Lantana Services, debtor hired truckers and invoiced site contractors for the trucking services. The Court finds debtor's testimony credible that she inadvertently failed to schedule these short term business ventures and her stock in Town & Country Excavation, Inc.

Farrell alleges that debtor swore at her  2004 Examination that she did not know the purpose or circumstances surrounding payments to Kevin Robinson in July 2003. Farrell alleges that  statement was false.  The Court finds that debtor has explained Town & Country's payments to Kevin Robinson. The Court finds that

debtor's inability to respond to Farrell's impromptu demand during deposition that she names the exact purpose of every check written during the existence of Town & Country's work on the Home Depot Corpus Christi does not constitute a knowing and fraudulent false oath or account.

### D. §727(a)(5)

Bankruptcy Code § 727(a)(2)(B), (a)(3), (a)(4)(A), (a)(5), and (a)(7) provide:

(a) The court shall grant the debtor a discharge, unless–

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;
. . . .

Farrell alleges that debtor violated § 727(a)(5) because debtor cannot explain the sources and disposition of her assets and those she controlled as a corporate officer on behalf of Town & Country.  Farrell alleges that debtor had not or refused to credibly explain what she did with trust funds of which she was trustee that she paid to herself and Kevin Robinson during the time period between February 2003 and August 2004. Farrell alleges that debtor has failed to explain satisfactorily before determination of denial of discharge any loss of assets or deficiency of assets to meet debtor's or Town & Country's liabilities.

The Court finds that debtor has explained satisfactorily, before determination

of denial of discharge, any loss of assets or deficiency of assets to meet the debtor's liabilities. The Court further finds that the evidence is clear that Farrell's failure to pay Monitor Trust on its contract to build the Home Depot Corpus Christi and Monitor Trust's consequent failure to pay Town & Country, contributed to the financial demise of Town & Country.  The Court finds that debtor has adequately explained any failure of assets to meet liabilities for both herself and for Town & Country.

### E. §727(1)(2),(3),(4)(A), and (5)

Bankruptcy Code § 727(a)(2)(B), (a)(3), (a)(4)(A), (a)(5), and (a)(7) provide:

(a) The court shall grant the debtor a discharge, unless–

(7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider;

Farrell alleges that under § 727(a)(7), debtor has committed acts specified in § 727 (a)(2), (3), (4)(A), and (5) concerning insiders Town & Country and Kevin Robinson.  The Court finds that Farrell has failed to prove that debtor committed any act in violation of § 727(a)(7).

## IV. Exemptions

Farrell filed an objection to debtor's exemptions. Farrell's objection to exemptions contends that debtor's exemption of her equity in her homestead exceeds that amount allowed by 11 U.S.C. §522(p), $125,000. Debtor's schedule C shows that debtor exempted her equity in the property, a total of $71,851.00. The Court finds that the amount of interest debtor acquired within the look back period does not exceed the cap of §522(p). Therefore, debtor's claim of exemption does not violate §522(p). See eg. In re Fehmel, 372 Fed. App. 507 (5th Cir. Tex. 2010). Farrell contends that debtor's listing of her property for $875,000 proves that she has attempted to exempt more than the amount allowed by the cap of §522(p) and (q). The Court finds that debtor has scheduled her property appropriately. The Court further finds that a seller's listing price without completion of a sale is inadequate to prove value.

Farrell also contends that debtor's exemption of her homestead violates §522(q)(1)(B)(ii). The Court finds that as with the result under § 522(p), debtor has not sought to exempt any amount of interest in excess of the cap of §522(q).

## V. Conclusion

The Court concludes that T.D. Farrell has failed to prove a cause of action for violation of Tex. Prop. Code §162.001 et seq. (the Texas Construction Trust Fund

Act). The Court concludes further T.D. Farrell has failed to prove that its alleged debt is not dischargeable under 11 U.S.C.

§ 523 (a)(4), or (a)(6).  The Court further concludes that Farrell has failed to prove an objection to debtor's discharge under 11 U.S.C. § 727(a)(2)(B), (a)(3), (a)(4)(A), (a)(5), or (a)(7). Lastly, the Court concludes that T.D. Farrell has failed to prove its objections to debtor's claim of exemption.

Signed this 26 day of _____, 2012 at Houston, Texas.

KAREN K. BROWN
UNITED STATES BANKRUPTCY JUDGE